**MTN**
RYAN M. ANDERSON, ESQ.
Nevada Bar No. 11040
KIMBALL JONES, ESQ.
Nevada Bar No. 12982
MORRIS ANDERSON
716 S. Jones Blvd
Las Vegas, Nevada 89107
Phone: (702) 333-1111
Fax: (702) 507-0092
Attorneys for Plaintiff

# UNITED STATES DISTRIC COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| LAUREN CALVERT, <br><br> Plaintiff, <br><br> vs. <br><br> DARLENE ELLIS AS SUCCESSOR IN INTEREST TO MICHAEL WAYNE ELLIS, EXPRESS DAILY, DAILY EXPRESS, INC., DOE OWNER, I-V, DOE DRIVER, I-V, ROE EMPLOYER, ROE COMPANIES and ROE TRUCKING COMPANY <br><br> Defendants. | CASE NO: 2:13-cv-00464-MMD-NJK |

## MOTION TO STRIKE IMPROPER REBUTTAL EXPERTS

## MEMORANDUM OF POINTS AND AUTHORITIES

COME NOW, Plaintiff, by and through her attorneys, MORRIS ANDERSON, and hereby moves this Honorable Court for the relief requested herein.

1

This Motion is based on the Points and Authorities set forth below, the papers and pleadings on file herein, and such oral argument as may be heard at the time of the hearing of this matter.

**NOTICE OF MOTION**

To:   ALL PARTIES AND THEIR COUNSEL OF RECORD

YOU WILL PLEASE TAKE NOTICE that the foregoing Motion will come on for hearing before the above entitled Court on the _____ day of _____, 2014, at _____ __.m., or as soon thereafter as counsel can be heard.

DATED this 29th day of April, 2014.

                MORRIS ANDERSON LAW

                By:___/s/ Ryan M. Anderson_____
                    RYAN M. ANDERSON, ESQ.
                    716 S. Jones Blvd.
                    Las Vegas, Nevada 89107
                    Attorneys for Plaintiff

**I.**

**STATEMENT OF FACTS**

This case arises out of a motor vehicle collision that occurred on May 6, 2011. Plaintiff Lauren Calvert was turning left on a green light when Defendant Michael Ellis, driving in the course and scope of his employment with Defendants Express Daily and Daily Express, Inc., ran a red light in the intersection and struck Ms. Calvert. Defendants caused significant injury to Ms. Calvert that has and will require multiple surgeries. Defendants admitted liability for causing the collision, thus the only issues in this case are Ms. Calvert's injuries and damages.

On April 9, 2013, Defendants disclosed their initial expert witness, Derek Duke, M.D., a neurosurgeon. (*See* Defendants' Rule 26 Production, Apr. 9, 2013, without exhibits, attached hereto as **Exhibit "A"**). On January 10, 2014, Plaintiff disclosed his retained initial expert witnesses: (1) Michael Prater, M.D., pain management physician; (2) Mark Kabins, M.D., orthopedic surgeon; (3) Stuart Kaplan, M.D., neurosurgeon; and (4) Philip Sidlow, vocational expert. *(See* Plaintiff's FRCP 26(a) Disclosures, Jan. 10, 2014, without exhibits, attached hereto as **Exhibit "B"**).

The initial expert deadline in this case was on January 14, 2014. On January 7, 2014, Defendants filed an Emergency Motion to Extend Discovery, asking this Court to extend discovery and the initial expert deadline, which Plaintiff opposed. (*See* Dkt. 39). On January 14, 2014, this Court denied Defendants' Motion, stating that Defendants did not show good cause to extend the expert deadline or discovery, and further that the evidence indicated that Defendants had not been diligent about discovery regarding Plaintiff's physicians and medical records. (*See* Dkt. 44, at p. 4:16-24). This Court found that extending discovery would greatly prejudice Plaintiff. (*See* Dkt. 44, at p. 5:15-17).

Defendants did not disclose any additional initial experts on or before the deadline on January 14, 2014, aside from their earlier disclosure of Dr. Duke.

Nearly one month later on February 12, 2014, however, Defendants disclosed the following experts, labeling them as "rebuttal" experts: (1) Edward Howden, vocational expert; (2) Clark Smith, M.D., psychiatrist; (3) John Schneider, Ph.D., economist; and (4) Kevin Kirkendall, CPA. (*See* Defendants' FRCP 26(a) List of Witnesses and Documents, Fourth Supp., Apr. 9, 2013, without exhibits, attached hereto as **Exhibit "C"**).

Although these experts are designated as "rebuttal" experts, they are not proper rebuttal experts because the issues on which they offer opinions are central to the case.  Further, they do not address or rebut Plaintiff's initial expert opinions.  The failure to designate these experts as initial experts blatantly circumvents this Court's Order denying Defendants' request to extend the initial expert deadline, and is neither harmless nor substantially justified.  Therefore, Plaintiff respectfully requests this Court to strike Mr. Howden, Dr. Smith, Dr. Schneider, and Mr. Kirkendall as experts in this case.

## II.

## ARGUMENT

### A. The Opinions of Dr. Smith, Dr. Schneider, Mr. Howden, and Mr. Kirkendall are Not Proper Rebuttal Opinions as They Do Not Rebut Plaintiff's Experts or Address Anticipated Portions of Plaintiff's Case-in-Chief

Expert disclosures shall be made "at the times and in the sequence that the court orders." Fed. R. Civ. P. 26(a)(2)(D).  FRCP 26(a)(2)(D)(ii) permits the admission of rebuttal expert testimony that is "intended solely to contradict or rebut evidence on the same subject matter identified **by an initial expert witness**."  *R&O Constr. Co. v. Rox Pro Int'l Group, Ltd.*, 2011 WL 2923703, *2 (D. Nev. July 18, 2011) (emphasis added).  Merely addressing the same general subject matter is not sufficient to show an expert is a rebuttal expert rather than an initial expert; the expert must directly address the adverse expert's findings.  *See id*. at *3.

Rebuttal expert reports are proper if they contradict or rebut the subject matter of the initial expert's report, but they are not the proper place for presenting new arguments. *Nunez v. Harper*, 2014 WL 979933, *1 (D. Nev. Mar. 11, 2014) (*citing R&O Constr. Co.*, 2011 WL 2923703 at *2).  Rebuttal expert opinions should address new, unforeseen issues upon which the opposing party's initial experts have opined.  *Id*.  "If the purpose of expert testimony is to

4

contradict an expected and anticipated portion of the other party's case-in-chief, then the witness is not a rebuttal witness or anything analogous to one." *Id*. Presenting a new, alternative theory of causation is not a rebuttal opinion; rather, it is an expected and anticipated portion of a party's case-in-chief. *See Amos v. Makita U.S.A., Inc.*, 2011 WL 43092, *2 (D. Nev. Jan. 6, 2011).

A party cannot abuse the rebuttal date and use it as "an extension of the deadline by which a party must deliver the lion's share of its expert information." *Amos*, 2011 WL 43092 at *2 (citing *Sierra Club, Lone Star Chapter v. Cedar Point Oil Co., Inc.*, 73 F.3d 546, 571 (5th Cir. 1996).

In *Nunez*, this Court addressed the exact issue presented in the instant Motion. There, the plaintiff moved to strike defense expert Dr. Duke because in his rebuttal report, he provided an alternative theory to causation, concluding that psychological factors caused the plaintiff's pain complaints rather than the subject incident. *Nunez*, 2014 WL 979933 at *2. The defendants opposed the motion, arguing that Dr. Duke covered the same subject matter as the plaintiff's expert report: the plaintiff's medical condition, whether her condition was related to the subject incident, and whether she needed future treatment. *Id.* The defendants further argued that Dr. Duke rebutted the plaintiff's expert by addressing information that the plaintiff's expert did not address, and also directly rebutted the expert's findings, noting there was no evidence to support the conclusions and they were incomplete because the plaintiff's expert did not have a complete medical history. *Id.*

This Court held in *Nunez* that Dr. Duke's opinions were improper rebuttal opinions because they were not restricted to attacking the plaintiff's experts, and his alternate theory of causation was an entirely new argument. *Id.* at *3. Dr. Duke set forth a number of his own

theories in his report, including lists of unrelated and related diagnoses, and only minor portions directly contradicted the plaintiff's expert. *Id.* Therefore, Dr. Duke's report did not constitute rebuttal opinions; rather, they were untimely disclosed initial expert opinions. *Id*. at *4.

Here, Defendants disclosed Edward Howden; Clark Smith, M.D.; John Schneider, Ph.D.; and Kevin Kirkendall, CPA as "rebuttal" experts, however, this label does not disguise the fact that they are initial experts who were untimely disclosed because this Court did not grant Defendants' request to extend the initial expert deadline. As the following subsections detail, these experts provide opinions that are central to the case and should have been anticipated by Defendants, and they do not address or rebut Plaintiff's initial expert opinions.

> 1.  <u>Plaintiff Does Not Have Any Psychiatric/Psychological Expert Thus Dr. Clark, a Psychiatrist, Does Not Rebut Any of Plaintiff's Experts and Provides Entirely New Opinions</u>

This argument sets aside and reserves Plaintiff's right to later address the clear violations of FRE 702 and *Daubert v. Merrel Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S. Ct. 2786 (1993) that Dr. Clark presents as a psychiatrist responding to opinions in the fields of orthopedic surgery, pain management, neurosurgery, and vocational rehabilitation.

It appears that Dr. Clark, a psychiatrist, attempts to rebut the opinions of ***all*** of Plaintiff's experts: Dr. Kabins, an orthopedic surgeon; Dr. Prater, a pain management physician; Dr. Kaplan, a neurosurgeon; and Mr. Sidlow, a vocational expert. (*See* Clark Report, attached as **Exhibit "D,"** at pp. 5-8; Kabins Report, attached as **Exhibit "E;"** Prater Report, attached as **Exhibit "F;"** Kaplan Report, attached as **Exhibit "G;"** Sidlow Reports, attached as **Exhibit "H"**). Dr. Clark is an improper rebuttal expert disclosure on its face given that Plaintiff has no psychological or psychiatric expert whatsoever. Furthermore, Dr. Clark presents an entirely new theory of causation for Ms. Calvert's injuries: her psychological condition. *(Id.)*.

Presenting a new, alternative theory of causation is not a rebuttal opinion; it is an expected and anticipated portion of a party's case-in-chief. *See Amos*, 2011 WL 43092 at *2.

Dr. Clark in this case can be analogized to Dr. Duke in *Nunez* because in both cases, the experts say the plaintiff's experts' opinions are incomplete because experts did not have a complete medical history, for example:

> . . .The evaluating doctors were not told about these injuries and no medical records regarding any evaluation of her back or neck was documented prior to the motor vehicle accident.

(See **Exhibit "D,"** at p. 6; *Nunez*, 2014 WL 979933 at *2-3).

> . . . Because she was not honest with her physicians about her severe alcoholism and recent fall down the stairs, this possibility was not considered.

*(Id.)*.

> Phillip Sidlow, M.D., C.R.C. was aware of the 5 DUI arrests, the chronic sedative hypnotic sleeping pill dependency, . . . yet he did not discuss any of these factors in his estimation of future work and/or life expectancy. . .

*(Id. at p. 7)*.

Furthermore, in both *Nunez* and the instant case, the experts proffer an alternative theory to causation, concluding that psychological factors caused the plaintiff's pain complaints rather than the subject incident. *Nunez*, 2014 WL 979933 at *2-3. Here, Dr. Clark states that Ms. Calvert's alleged alcohol dependency, cigarette smoking, sedative hypnotic sleeping pill dependency, and bipolar disorder would decrease her life expectancy to 49 years. (*See* **Exhibit "D"** at pp. 7-8). None of Plaintiff's experts address these issues, and they are not new, unforeseen issues that were unknown to Defendants prior to the initial expert deadline. Only two paragraphs in the entire report address medical records in January 2014, and the rest are from 2013 or earlier. Dr. Clark's opinions regarding Ms. Calvert's alleged dependencies and psychological condition as the cause, or contributing factors, to her injuries and life expectancy

are brand new opinions. Just as Dr. Duke was found to provide initial expert opinions in *Nunez*, here, Dr. Clark should be found to be an initial expert rather than a rebuttal expert.

    2.    <u>Dr. Schneider Presents Entirely New Opinions That Do Not Rebut Any of Plaintiff's Experts</u>

The face of Dr. Schneider's report makes blatantly clear that his opinions are not rebuttal opinions because the topic alone, "Health Economics," is not addressed in any of Plaintiff's expert reports. (*See* Schneider Report, attached hereto as **Exhibit "I"**). Dr. Schneider states that his report serves as a rebuttal to the valuation opinions of Dr. Kaplan, Dr. Prater, and Dr. Kabins, however, he fails to address or respond to any of their opinions. (*Id*. at p. 1). First of all, this single sentence is the ***sole mention*** of these doctors in Dr. Schneider's entire report. Second, Dr. Schneider fails to address a single opinion of Dr. Kaplan, Dr. Prater, or Dr. Kabins. Third, Dr. Kaplan, Dr. Prater, and Dr. Kabins do not provide any "valuation opinions" in their reports, thus it is unknown what Dr. Schneider "rebuts" in his report. (*See* **Exhibits "E," "F,"** and **"G"**).

Dr. Schneider's report provides entirely new opinions, methods, and issues that are not in Plaintiff's expert reports and Plaintiff did not even know were an issue in this case. It is abundantly clear that he was intended to be an initial expert, but Defendants missed the deadline. Therefore, this Court should find that Dr. Schneider is clearly an initial expert and not rebuttal in nature at all.

    3.    <u>Mr. Howden Minimally Addresses the Findings of Plaintiff's Vocational and Economic Expert, Mr. Sidlow, and Utilizes an Entirely New Expert Method</u>

Mr. Howden only cursorily addresses the opinions of Mr. Sidlow, Plaintiff's vocational and economic expert. (*See* Howden Report, attached hereto as **Exhibit "J,"** at p. 2). Mr. Howden's report presents initial expert opinions using an entirely new method of analysis, the

RAPEL method. *(Id.* at pp. 5-6). His report does not merely respond to Mr. Sidlow's opinions, but reviews and analyzes all of the evidence in this case. (*Id.* at pp. 3-7). Although he includes a handful of sentences scattered throughout his report that addresses the specific finds of Mr. Sidlow, the vast majority of it consists of brand new vocational opinions, utilizing a brand new method of analysis. Merely addressing the same general subject matter of Plaintiff's expert is not sufficient to show that Mr. Howden is a rebuttal expert rather than an initial expert; Mr. Howden must directly address Mr. Sidlow's findings in order to be a proper rebuttal expert. *See R&O Constr. Co.*, 2011 WL 2923703 at *3. Furthermore, rebuttal opinions are not those that address an expected and anticipated part of Plaintiff's case-in chief. *Nunez*, 2014 WL 979933 at *1. Defendant has vaguely shrouded Mr. Howden's initial expert opinions as rebuttal opinions, but Mr. Howden barely addresses Mr. Sidlow's findings, and Ms. Calvert's loss of earning capacity has been a central part of this case from the beginning of litigation. Therefore, Plaintiff respectfully requests this Court to find that Mr. Sidlow was improperly disclosed as a rebuttal expert.

      4.     *<u>Although Mr. Kirkendall Addresses Some of Mr. Sidlow's Opinions, He Utilizes an Entirely New Expert Method and Presents New Opinions</u>*

This argument sets aside and reserves Plaintiff's right to later address the clear violations of FRE 702 and *Daubert v. Merrel Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S. Ct. 2786 (1993) that Mr. Kirkendall presents as a CPA giving vocational expert opinions, and also the cumulative and duplicative nature of his and Mr. Howden's opinions.

Mr. Kirkendall does address the opinions of Mr. Sidlow, Plaintiff's vocational and economic expert. (*See* Kirkendall Report, attached hereto as **Exhibit "K"**). Like Mr. Howden, however, he presents an entirely new method of analysis, the RAPEL method. (*Id*. at pp. 5-6). Most importantly, Defendants knew from the beginning of litigation that Plaintiff was claiming

lost wages and lost earning capacity. An opinion is not rebuttal in nature if it presents opinions that are expected and anticipated in Plaintiff's case-in-chief, and it does not address new, unforeseen issues presented by Plaintiff's initial experts. *See Nunez*, 2014 WL 979933 at *1; *R&O Constr. Co.*, 2011 WL 2923703 at *2. Because Defendants knew that Plaintiff was claiming lost wages and lost earning capacity, Mr. Kirkendall presents an entirely new method to analyze vocational loss, and he does not address any new issues from Plaintiff's experts, Plaintiff respectfully requests this Court to find that Mr. Kirkendall is an initial expert.

The foregoing facts, law, and analysis demonstrate that Dr. Clark, Dr. Schneider, Mr. Howden, and Mr. Kirkendall are initial experts thinly veiled as "rebuttal" experts because Defendants missed the initial expert deadline. The following section shows the Court that Defendants' untimely disclosure of these initial expert opinions are neither harmless nor substantially justified, and these experts should be stricken.

**B. Defendants' Late Disclosure of Initial Expert Opinions Should Be Stricken as They Circumvent This Court's Previous Order Denying an Extension of the Initial Expert Deadline Because Such an Extension Would Prejudice Plaintiff**

Pursuant to FRCP 37(a), if a party fails to comply with FRCP 26(a), it may not use that evidence at trial, a hearing, or in a motion unless such failure was substantially justified or harmless to the opposing party. *R&O Constr. Co.*, 2011 WL 2923703 at *3. The burden is on the disclosing party to show that the delay was substantially justified or harmless. *Amos*, 2011 WL 43092 at *3 (citing *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106-07 (9th Cir. 2001)). Factors to consider in deciding whether a violation of a discovery deadline is justified or harmless are: (1) prejudice or surprise to the opposing party; (2) the ability of that party to cure the prejudice; (3) the likelihood of disruption of the trial; and (4) bad faith or willfulness involved in the untimely disclosure. *Id*.

In *Nunez*, this Court found that although Dr. Duke was an untimely-disclosed initial expert, there was no harm to the plaintiff because the discovery deadline had been extended. *Nunez*, 2014 WL 979933 at *5.  Instead, this Court sanctioned the defendant by restricting Dr. Duke's testimony so that he could not rebut any of the plaintiff's experts; telling the jury that Dr. Duke had the tactical advantage of seeing the plaintiff's expert reports before preparing his opinions; allowing the plaintiff to take Dr. Duke's deposition and supplement her expert reports; and prohibiting the defendant from taking depositions of the plaintiff's experts.  *Id.*

The instant case differs from nearly all of those addressed in the District of Nevada, including *Nunez*, because none of these previous cases involved a defendant's blatant disregard of a court order denying defendant's request for an extension of the initial expert deadline. Here, the Court expressly denied Defendants' request to extend the initial expert deadline.  *(See* Dkt. 44).  The Court found that there was no good cause to extend the deadline and Defendants had not exercised diligence in obtaining certain medical discovery that Defendants stated was allegedly necessary to their expert reports.  (*Id*. at p. 4).  Most importantly to the instant Motion, this Court found that the discovery deadlines had already been extended before, and further extending discovery "***will greatly prejudice the opposing party,***" Plaintiff.  (*Id.* at p. 5).  This Court also noted that Defendants' request for the extension showed they "hoped to substantially delay the case."  (*Id.*).

Defendants blatantly ignored this Order, circumventing it by cloaking its initial experts as rebuttal experts.  The findings by this Court in the Order show that Defendants' untimely initial expert opinions are neither harmless or substantially justified pursuant to the four factors to be analyzed:

(1) **Prejudice or surprise to the opposing party**: this Court already found that extending the initial expert deadline would prejudice Plaintiff because it would cause discovery to be extended and trial to be delayed (Dkt. 44, at p. 5);

(2) **The ability of that party to cure the prejudice**: Defendants' experts, particularly Dr. Clark and Dr. Schneider, present entirely new opinions and defense theories in psychiatry and "health economics." Plaintiff does not have any expert in these fields thus it is impossible for Plaintiff to cure the prejudice caused by Defendants' disclosure of their "rebuttal" experts;

(3) **The likelihood of disruption of the trial**: as stated before, this Court already found that extending the initial expert deadline would cause discovery to be extended and trial to be delayed (Dkt. 44, at p. 5); and

(4) **Bad faith or willfulness involved in the untimely disclosure**: Defendants already asked this Court to extend the initial expert deadline and the request was denied, thus they are fully aware that their "rebuttal" experts are actually initial expert opinions. Defendants willfully disclosed these opinions, masquerading them as rebuttal opinions and hoping they could skirt by Plaintiff and the Court without detection. This blatant violation of the Court's Order constitutes bad faith, or at least full knowledge that their experts' opinions are not truly rebuttal in nature.

*See Amos*, 2011 WL 43092 at *3 (citing *Yeti by Molly, Ltd.*, 259 F.3d at 1106-07).

All four factors are present in this case that support a showing of harm caused by Defendants' untimely disclosures. Defendants know full well that their experts do not provide rebuttal opinions and they in fact improperly provide the "lions share of its expert information" that is appropriate only for initial experts. *See Amos*, 2011 WL 43092 at *2 (citing *Sierra Club,*

*Lone Star Chapter*, 73 F.3d at 571).  Defendants' "rebuttal" expert opinions are merely an attempt to circumvent this Court's Order denying their request to extend the initial expert deadline, however, a party cannot abuse the rebuttal date and use it as an extension of the initial expert deadline.  *See id.*  Because these opinions are not rebuttal in nature and their untimely disclosure is neither harmless, nor substantially justified, Plaintiff respectfully requests this Court to strike Dr. Clark, Dr. Schneider, Mr. Howden, and Mr. Kirkendall as experts.

## III.

## CONCLUSION

Based on the foregoing facts, law, and analysis, Plaintiff respectfully requests this Court to GRANT her Motion to Strike Improper Experts.

DATED this 29th day of  April, 2014.

                                                MORRIS ANDERSON LAW

                                                By:___/s/ Ryan M. Anderson_____
                                                RYAN M. ANDERSON, ESQ.
                                                Nevada Bar No. 11040
                                                KIMBALL JONES, ESQ.
                                                Nevada Bar No. 12982
                                                716 S. Jones Blvd.
                                                Las Vegas, Nevada 89107
                                                Attorneys for Plaintiff