**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| LAUREN CALVERT, | ) |
| Plaintiff, | ) Case No. 2:13-cv-00464-APG-NJK |
| vs. | ) ORDER |
| | ) (Docket No. 54) |
| DARLENE ELLIS AS SUCCESSOR IN INTEREST TO MICHAEL WAYNE ELLIS, et al., | ) |
| Defendants. | ) |

Pending before the Court is Plaintiff's Motion to Strike Improper Rebuttal Experts. Docket No. 54. The Court has considered the motion, response, reply, and sur-reply. Docket Nos. 54, 58, 62, 74. The Court finds that the motion is appropriately resolved without oral argument. *See* Local Rule 78-2.

**I.  BACKGROUND**

This is a personal injury action arising out of a motor vehicle accident that occurred on May 6, 2011. Docket No. 52, at 2. According to the Second Amended Complaint, Michael Wayne Ellis[1] struck Plaintiff Lauren Calvert's vehicle while she was driving in Clark County, Nevada. Docket No. 49, at 3. As a result

---

[1] Michael Wayne Ellis, who is now deceased, was a truck driver working exclusively as an independent contractor for Defendant Daily Express, Inc. at the time of the motor vehicle accident. Docket No. 52, at 3.

of the accident, Plaintiff alleges that she sustained injuries to her neck, back, legs, arms, organs, and systems. *Id*., at 5. On March 1, 2013, Plaintiff filed the instant action in the District Court for Clark County, Nevada. Docket No. 1, at 2. Thereafter, Defendants removed the case to this Court on March 20, 2013. Docket No. 1. Plaintiff amended her Complaint on March 20, 2013, Docket No. 7, and subsequently filed a Second Amended Complaint on February 6, 2014. Docket No. 49.

On April 18, 2013, the Court approved the parties' Discovery Plan and Scheduling Order. Docket No. 21. On October 8, 2013, the Court granted an extension of discovery deadlines. Docket No. 38. This extension set the deadline for initial expert disclosures on January 13, 2014, and the deadline for rebuttal expert disclosures on February 12, 2014. *Id.*, at 3. On January 7, 2014, Defendants filed an Emergency Motion to Extend Discovery, Docket No. 39, which the Court denied on January 13, 2014. Docket No. 44. On February 21, 2014, the parties filed a third request to extend discovery deadlines. Docket No. 50. The Court granted the parties' request, and extended the discovery cutoff deadline to June 13, 2014, the motions deadline to July 11, 2014, and the joint pretrial order deadline to August 12, 2014. Docket No. 51, at 2-3. Neither the expert nor the rebuttal expert deadline was extended. *Id*. On June 5, 2014, the parties filed a fourth request to extend discovery deadlines. Docket No. 68. The Court granted the parties' request, and extended the discovery cutoff deadline to July 11, 2014, the motions deadline to August 8, 2014, and the joint pretrial order deadline to September 5, 2014. Docket No. 69, at 2-3. Neither the expert nor the rebuttal expert deadline was extended. *Id*.

On January 10, 2014, Plaintiff disclosed her retained initial expert witnesses: "(1) Michael Prater, M.D., pain management physician; (2) Mark Kabins, M.D., orthopedic surgeon; (3) Stuart Kaplan, M.D., neurosurgeon; and (4) Philip Sidlow, vocational expert." Docket No. 54, at 3. On February 12, 2014, Defendants disclosed the expert rebuttal reports of John Schneider, Ph.D, Clark Smith, M.D., Edward Howden, and Kevin Kirkendall, CPA. Docket No. 58, at 2.[2] Plaintiff now moves to strike Defendants' rebuttal expert witnesses. Docket No. 54.

---

[2] On April 9, 2013, Defendants disclosed Dr. Derek Duke as an initial expert. Docket No. 54, at 3.

## II. DISCUSSION

### A. Motion to Strike Defendants' Rebuttal Expert John Schneider, Ph.D.

On February 12, 2014, Defendants disclosed John Schneider, Ph.D., economist, as a rebuttal expert witness. Docket No. 54, at 3. Dr. Schneider's expert report is dated February 6, 2014. Docket No. 58-7, at 1-7. In his report, Dr. Schneider states that the "objective of this analysis is to review the value of past medical expenditures provided to the Plaintiff ... in regards to the reasonableness of the medical bills. This report serves as a rebuttal to the valuation opinions of Dr. Kaplan ... Dr. Prater ... and Dr. Kabins." *Id*., at 1. Dr. Schneider writes that his "opinions and conclusions are all within a reasonable degree of certainty in the field of health economics." *Id*. Dr. Schneider purports to demonstrate that the reasonable value of Plaintiff's medical bills is much less than what was actually charged to Plaintiff, using a form of economic analysis centering around a methodology that defines value "primarily as a market willingness to pay." *Id*., at 2 (*internal quotations omitted*). In his report, Dr. Schneider does not examine the methodologies employed by Doctors Kaplan, Prater, and Kabins. *Id.*, at 1-7. Dr. Schneider does, however, compare the costs for services he deems reasonable against the costs actually charged. *Id.*, at 6.

#### 1. Whether Dr. Schneider's Report was an Improper Rebuttal Report

Rebuttal expert testimony is restricted to subjects which are "intended solely to contradict or rebut evidence on the same subject matter identified by another party." Fed. R. Civ. P. 26(a)(2)(D)(ii). In a case cited by Plaintiff, *R & O Constr. Co. v. Rox Pro Int'l Grp., Ltd.*, 2011 U.S. Dist. LEXIS 78032, *5 (D. Nev. July 18, 2011), Magistrate Judge Lawrence R. Leavitt discussed the subject of what constitutes legitimate rebuttal expert testimony:

> Rebuttal expert reports "necessitate 'a showing of facts supporting the opposite conclusion' of those at which the opposing party's experts arrived in their responsive reports." ... "If the purpose of expert testimony is to 'contradict an expected and anticipated portion of the other party's case-in-chief, then the witness is not a rebuttal witness or anything analogous to one.'" *Amos v. Makita U.S.A.,* 2011 WL 43092, at *2 (D. Nev Jan. 6, 2011) (*quoting In re Apex Oil Co.,* 958 F.2d 243, 245 (8th Cir .1992)); *see also Morgan v. Commercial Union Assur. Cos.,* 606 F.2d 554, 556 (5th Cir. 1979); *LaFlamme v. Safeway, Inc.,* 2010 WL 3522378, at *3 (D. Nev. Sep. 2, 2010). Rather, rebuttal expert testimony "is limited to 'new unforeseen facts brought out in the other side's case.'" In re President's Casinos, Inc., 2007 WL 7232932, at* 2 (E.D. Mo. May 16, 2007) (quoting Cates v. Sears, Roebuck & Co., 928 F.2d 679, 685 (5th Cir. 1991)).

*Id.*; *see also Downs v. River City Grp., LLC*, 2014 WL 814303, at *3 (D. Nev. Feb. 28, 2014) ("Expert testimony which is not truly rebuttal in nature shall not be allowed at trial, unless the failure to disclose information required by Rule 26(as) was 'harmless' or 'substantially justified'"), *citing* Fed. R. Civ, P. 37(c)(1). "The sanction of preclusion is 'automatic and mandatory unless the sanctioned party can show its violation ... was either justified or harmless.'" *Id*. (*quotation omitted*).

Plaintiff asserts that "Dr. Schneider's report makes blatantly clear that his opinions are not rebuttal opinions because the topic alone, 'Health Economics,' is not addressed in any of Plaintiff's expert reports." Docket No. 54, at 8. Plaintiff argues that, due to the fact that Dr. Schneider introduces "entirely new opinions, methods, and issues that are not in Plaintiff's expert reports," his report is "not rebuttal in nature." *Id*. In response, Defendants argue that Dr. Schneider's report covers the same subject matter "upon which Plaintiff's treating doctors have opined." Docket No. 58, at 9. Defendants maintain that, because Dr. Schneider's conclusions as to the reasonableness of Plaintiff's medical expenses "directly" rebut those of Plaintiff's experts, that Dr. Schneider's report qualifies as an expert rebuttal report. *Id*.

In reply, Plaintiff argues that a proper rebuttal report that merely addresses the same general subject matter as an initial expert report - and arrives at an opposite conclusion - does not qualify as a rebuttal report; rather, "the expert must directly address the adverse expert's findings." Docket No. 62, at 15 (*citing R & O Constr. Co.*, 2011 U.S. Dist. LEXIS 78032, at *3). Plaintiff notes that while "Dr. Schneider's opinions concern the reasonableness of [Plaintiff's] medical bills in general, Dr. Schneider expands far beyond this subject matter and utilized new, complex methodology in a new field of expertise that is not considered by Plaintiff's experts." *Id.*, at 15-16. In this respect, Plaintiff contends, Dr. Schneider's opinions are properly characterized as those of an initial expert. *Id.*, at 15. Plaintiff maintains that Dr. Schneider's report is not proper rebuttal opinion, especially given that "Dr. Schneider addresses the reasonableness of [Plaintiff's] past medical bills, which is an anticipated and expected portion of Plaintiff's case-in-chief." *Id.*, at 16.

In *Downs*, 2014 WL 814303, this Court addressed the same question of whether a rebuttal expert report constituted legitimate rebuttal testimony. In that case, the Court found that the rebuttal expert report was not a true rebuttal because it did not "explain, repel, counteract or disprove evidence of the adverse

4

party," nor was it "limited to new, unforeseen facts brought out in the other side's case." *Id.*, at *5. Relying on *R & O Constr.*, the Court held that rebuttal experts "must restrict their testimony to attacking the theories offered by the adversary's experts." *Id.*, *citing R & O Constr. Co.*, 2011 U.S. Dist. LEXIS 78032, at *8. To support its conclusion, the Court noted that the rebuttal expert only addressed the initial expert's report in passing. *Id.*, at *16.

The Court finds that *Downs* is instructive. As discussed above, Dr. Schneider's report does not address any of the opinions offered by Plaintiff's experts, nor is Dr. Schneider's opinion on the reasonableness of Plaintiff's medical bills limited to facts which were unforeseen at the time of the deadline for initial expert disclosures. Thus, as was the case in *Downs*, "[u]nder the standard that the function of rebuttal testimony is to explain, repel, counteract or disprove evidence of the adverse party ... and is limited to new, unforeseen facts brought out in the other side's case," it is difficult for the Court to view Dr. Schneider as a legitimate rebuttal expert. *Downs,* 2014 WL 814303, at *5 (*internal quotations and citations omitted*).

Given that Defendants have already admitted liability in this case, Docket No. 52, at 2-3, the issue of whether Plaintiff's medical bills are reasonable is one of the central features of this entire litigation. Therefore, Dr. Schneider's opinions on these matters are not opinions on "new, unforeseen facts" brought out in the other side's case, as the medical bills were a part of discovery long before expert reports were due. *See* Docket No. 37, at 5 ("Defendants have obtained 778 pages of medical records and billings ..."). *Id*. Although Dr. Schneider and Plaintiff's experts' reports address the same general subject matter of the case, Docket No. 58, at 9, Dr. Schneider's report does not directly address the findings, *i.e.* "the same subject matter," of Plaintiff's experts' reports. Therefore it is not a rebuttal expert report within the meaning of Fed. R. Civ. P. 26(a)(2)(C)(ii). *R & O Constr. Co.*, 2011 U.S. Dist. LEXIS 78032, at *8, *citing Vu v. McNeil-PPC, Inc.,* 2010 U.S. Dist. LEXIS 53639, at *3 (C.D. Cal. May 7, 2010) (finding that such a broad meaning would all but nullify the distinction between an initial "affirmative expert" and a "rebuttal expert"). Dr. Schneider does not explicitly address Plaintiff's experts' findings, and does not offer any opinions on new, unforeseen facts brought out in the other side's expert report; accordingly, Dr. Schneider's report does not constitute rebuttal testimony.

5

### 2. Whether Dr. Schneider's Untimely Report was Justified or Harmless

Next, although the Court has determined that Dr. Schneider's report does not qualify as a rebuttal expert report, the Court must still determine whether his report might be admissible as that of an initial expert. *Downs,* 2014 WL 814303, at *5 (*citation omitted*). Since Defendants failed to provide the report of Dr. Schneider within the deadlines set by this Court, the federal rules require that Defendants be precluded from using Dr. Schneider as an expert witness unless Defendants can demonstrate that their violation of the January 14, 2014, discovery deadline was "harmless" or "substantially justified." Fed. R. Civ. P. 37(c)(1). "[T]he burden is on the party facing sanctions to prove harmlessness." *Yeti by Molly Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001). Among the factors that may properly guide a district court in determining whether a violation of a discovery deadline is justified or harmless are: (1) prejudice or surprise to the party against whom the evidence is offered; (2) the ability of that party to cure the prejudice; (3) the likelihood of disruption of the trial; and (4) bad faith or willfulness involved in not timely disclosing the evidence. *Lanard Toys, Ltd. v. Novelty, Inc.*, 375 Fed. App'x 705, 713 (9th Cir. 2010); *see also Yeti by Molly Ltd.*, 259 F.3d at 1107 ("Rule 37(c)(1) ... was intended to foster stricter adherence to discovery requirements and to broaden the power of the district courts to sanction violations of Rule 26").

Further, the district court has wide latitude in resolving discovery disputes involving experts under Rule 37(c)(1). "Excluding expert testimony is not proper when there are other, less severe sanctions available." *Makita*, 2011 WL 43092, *citing Galantine v. Holland Am. LineWestours, Inc.*, 333 F. Supp.2d 991, 993-94 (W.D. Wash. 2004). Thus, "where the harm can be easily remedied, exclusion is not the proper sanction." *Makita*, 2011 WL 43092, at *4, *citing Frontline Med. Assocs. V. Coventry Health Care*, 263 F.R.D. 567, 570 (C.D. Cal. 2009).

Here, Plaintiff submits she is prejudiced because Dr. Schneider presents "entirely new opinions and defense theories" in health economics, which cannot be cured since "Plaintiff does not have any expert in these fields." Docket No. 54, at 12. Plaintiff asserts that the trial in this matter would be disrupted if the initial expert deadline were to be extended in order to allow Plaintiff to procure a rebuttal expert, and claims that Defendants have willfully attempted to "masquerad[e]" initial expert opinions as rebuttal opinions.

*Id*. Plaintiff concludes that Defendants' attempt to use Dr. Schneider as a rebuttal witness is neither justified nor harmless, and requests the court to strike Dr. Schneider.

In response, Defendants assert that "Plaintiff has sat idly by since the rebuttal disclosures were made without effort to depose or respond to these experts until just very recently." Docket No. 58, at 11. Defendants further state that Plaintiff's scheduling of a deposition of Dr. Schneider has "obviated" any prejudice, and notes that "Plaintiff can still supplement her reports up to thirty (30) days prior to trial." *Id*., at 11.

Here, the Court finds that, since Dr. Schneider was disclosed months before the close of discovery on July 11, 2014, time existed for Plaintiff to depose and rebut him, and any surprise or prejudice suffered by Plaintiff is minimal. In addition, Plaintiff can still supplement her experts' reports up until 30 days before trial pursuant to Fed. R. Civ. P. 26(e)(2), and has, in fact, done so. Docket No. 74, at 2, 10. Additionally, Plaintiff's experts had the benefit of Dr. Schneider's report before they were deposed, *id*., at 10, and it appears as if Plaintiff has deposed Dr. Schneider. Docket No. 58, at 11. Next, because Plaintiff has suffered minimal prejudice and surprise, there is ample opportunity to cure the prejudice. In regard to any disruption of the trial, the trial has not been set and, other than the untimeliness of Dr. Schneider's report, his report has not caused any disruption in this case. *See Downs*, 2014 WL 814303, at *7. Further, there is no evidence of bad faith or wilfulness on behalf of Defendants and, additionally, other sanctions are available to ameliorate any prejudice to Plaintiff.

Therefore, although the Court does not approve of Defendants' failure to comply with the Rules, it does not appear that the exclusion of Dr. Schneider as an expert is the appropriate remedy. *See id.*, at *8. However, while the Court declines to impose the harsh sanction of exclusion, in the exercise of the Court's broad discretionary powers, the Court nevertheless will condition Defendants' ability to call Dr. Schneider as a witness subject to the following revisions:

1) Dr. Schneider may not be used to rebut any opinions or methodology of Plaintiff's experts; je may be used solely as an initial expert.

2) Plaintiff, if she has not yet done so, may depose Dr. Schneider, within 30 days from the date of this Order.

7

1    3) Plaintiff's experts may prepare an amended or supplemental report taking Dr. Schneider's
2    deposition testimony into consideration.

3    **B.    Motion to Strike Defendants' Rebuttal Expert Clark Smith, M.D.**

On February 12, 2014, Defendants disclosed Clark Smith, M.D., a psychiatrist, as a rebuttal expert witness. Docket No. 54, at 3. Dr. Smith's expert report is dated February 5, 2014. Docket No. 58-6, at 1-8. In his expert report, Dr. Smith explicitly refers to the reports of Plaintiff's experts, and criticizes them based on his opinion that Plaintiff's experts failed to consider salient facts relating to Plaintiff's medical condition. *Id.*, at 4-8. In the instant motion, Plaintiff argues that Dr. Smith "presents an entirely new theory of causation for [Plaintiff's] injuries: her psychological condition." Docket No. 54, at 6. In response, Defendants counter that "Dr. Smith does not state that psychological factors are the cause of Plaintiff's pain." Docket No. 58, at 9. The Court turns to the substance of Dr. Smith's report.

            1.    <u>Drs. Kaplan, Prater, and Kabins</u>

Dr. Smith's report begins by describing Plaintiff's medical history, including her history of alcohol and substance abuse. Docket No. 58-6, at 1-4. Following this recitation, the next section reflects Dr. Smith's critique of the failure of Plaintiff's medical experts - Drs. Kaplan, Prater, and Kabins - to consider Plaintiff's medical history in arriving at the conclusions that they express in their respective expert reports. Thus:

> The medical records from [Plaintiff's] treating physicians and the legal reports submitted by [Drs. Prater and Kabins] all show the same glaring deficiency.
> ...
>
> It is clear from all of the records reviewed by Dr. Prater, including records from ... Stuart Kaplan, M.D. ... that none of these treating physicians were aware of [Plaintiff's] severe and ongoing problems with alcoholism and sedative hypnotic sleeping pill dependence.
> ...
>
> Dr. Prater and all of the other treating physicians noted above were also unaware that Ms. Calvert had been treated for intravenous drug abuse with methamphetamine addiction.
> ...
>
> Dr. Prater and the other treating physicians listed above did not appear to be aware of [Plaintiff's] severe addiction problems[.]
> ...
>
> Dr. Kabins' history and physical includes a social history. "The patient does not smoke, does not consume alcohol, and denies the use of street drugs."

> ...
>
> Dr. Kabins does not mention that she has had multiple, severe injuries due to falling while intoxicated, or consider that this may be the cause of her new injuries.
>
> ...
>
> [Dr. Kabins] does not mention the history of intravenous methamphetamine addiction and inpatient hospitalizations for addiction treatment ... He states that [Plaintiff] has been "absolutely stable, functioning well," but makes no mention of her 5 arrests for driving under the influence of alcohol or multiple hospitalizations for alcohol and drug intoxication and overdose.

*Id.*, at 4-5.

It is clear that Dr. Smith relied on Plaintiff's initial expert reports in crafting his rebuttal report, and that his opinion regarding Plaintiff's experts' failure to consider Plaintiff's medical history "contradict[s] or rebut[s] evidence on the same subject matter identified by another party" required by Fed. R. Civ. P. 26(a)(2)(D)(ii). As this Court noted in *LaFlamme*, rebuttal testimony is proper where it questions the "assumptions and methods" of an opposing initial expert. 2010 U.S. Dist. LEXIS 98815, at *8. Moreover, as long as the "rebuttal expert witnesses speak to the same subject matter the initial experts addressed and do not introduce novel arguments, their testimony is proper under Federal Rule of Civil Procedure 26(a)(2)(C) and related case law from District Courts in [the Ninth ] circuit." *Id*. (*citing Lindner v. Meadow Gold Dairies, Inc.*, 249 F.R.D. 625, 636 (D. Hawaii 2008), *and Trowbridge v. United States*, 2009 WL 1813767, at *11 (D. Idaho June 25, 2009)).

Dr. Smith criticizes Plaintiff's experts for failing to account for what he considers to be critical information in arriving at their conclusions. Document No. 58-6, at 4-7. Contrary to Plaintiff's assertion, Dr. Smith does not offer a novel argument by opining that her "psychological condition" is the cause of her pain. Docket No. 54, at 6. To the contrary, Dr. Smith does not offer a theory of causation in his expert rebuttal report.[3] Document No. 58-6. Rather, Dr. Smith questions the assumptions that Plaintiff's medical

---

[3] Dr. Smith appears open to the question of whether the motor vehicle accident is the sole cause of Plaintiff's documented injuries: "It is not known if [Plaintiff] sustained any of these injuries in another fall while intoxicated between the motor vehicle accident and one week later, when she was first evaluated. Because she was not honest with her physicians about her severe alcoholism and recent fall down the stairs, this possiblity was not considered." Docket No. 58-6, at 6. This observation is not being offered as an expert theory of causation, however, as Dr. Smith does not opine that Plaintiff's injuries were in fact caused

9

1  experts rely upon in arriving at the conclusions expressed in their expert reports, and specifically opines
2  that Plaintiff's experts' opinions all suffer from the "same glaring deficiency." *Id*., at 5. Dr. Smith's report
3  is therefore a proper rebuttal report. *See LaFlamme*, 2010 U.S. Dist. LEXIS 98815, at *9 n.4 ("Defendant
4  seeks to introduce rebuttal testimony not to question the existence of a key element of the plaintiffs' case -
5  whether or not [plaintiff] suffered losses - but rather to question the method of calculation and assumptions
6  relied upon by plaintiffs' experts").

### 2. Plaintiff's Expert Mr. Sidlow

Dr. Smith also addresses the conclusions of Mr. Sidlow, Plaintiff's vocational expert. Docket No. 58-6, at 7. In his report, Dr. Smith criticizes Mr. Sidlow's methodology with respect to his failure to incorporate Plaintiff's medical history into his calculation of Plaintiff's life expectancy. *Id*. It is clear from Dr. Smith's expert report that he reviewed Mr. Sidlow's expert report in detail. *Id*. Moreover, Dr. Smith explicitly opines on Mr. Sidlow's methodology, in particular his alleged failure to incorporate Plaintiff's medical history into his future earnings loss analysis. Thus, Dr. Smith states that Mr. Sidlow "was aware of the 5 DUI arrests, the chronic sedative hypnotic sleeping pill dependency, the unstable bipolar disorder, the multiple near fatal alcohol and drug overdoses, and the ongoing cigarette smoking, yet he did not discuss any of these factors in his estimation of future work and/or life expectancy." *Id*. Dr. Smith is also critical of Mr. Sidlow's estimation "that it is possible that [Plaintiff] will still be working through age 89," and notes that "he bases his calculations of lost income on this estimation." *Id*. Dr. Smith concludes his report by describing how Plaintiff's risk factors - "alcohol dependency, ... [c]igarette smoking, ...[s]edative hypnotic sleeping pill dependence, ... [and] Bipolar Disorder," - when "taken together, result in a life expectancy of 49 years[.]" *Id*.

Since Mr. Sidlow offered an expert opinion as to Plaintiff's life expectancy, Dr. Smith's estimation is a proper rebuttal to Mr. Sidlow's calculation. The clear implication from Dr. Smith's report is that Mr. Sidlow's life expectancy calculation is flawed, which would obviously affect "Plaintiff's claims of future

---

by another incident. Instead, this excerpt is another example of Dr. Smith's general critique - *i.e.* rebuttal - of the flawed methodology employed by Plaintiff's experts; namely, their failure to consider Plaintiff's relevant medical history in evaluating her injuries.

lost income, medical expenses, pain and suffering, and any other damages predicated upon the longevity of her life." Docket No. 58, at 8. Dr. Smith's report is thus a proper rebuttal because he questions and contradicts the methodology and facts considered by Mr. Sidlow in arriving at his life expectancy conclusions, which in turn affect the validity of Mr. Sidlow's calculation of future lost earnings. Docket No. 58-6, at 7. As this Court stated in *LaFlamme*, "[c]ontradicting expert opinions, questioning methodology, and opining on methods and facts plaintiffs' experts did not consider are precisely the type of rebuttal testimony the court would expect." 2010 U.S. Dist. LEXIS 98815, at *9-10.

Accordingly, the Court concludes that Dr. Smith's expert report properly rebuts the reports of Plaintiff's medical experts and Plaintiff's vocational expert, in that it directly challenges the factual bases and methodology by which Plaintiff's experts arrived at their conclusions.

**C.     Defendants' Rebuttal Experts Edward Howden and Kirk Kirkendall, CPA**

On February 12, 2014, Defendants disclosed Edward Howden, vocational expert, as a rebuttal expert witness. Docket No. 54, at 3. Mr. Howden's report was offered to rebut the opinions of Plaintiff's expert Mr. Sidlow. Docket No. 58, at 6. Mr. Howden's expert report is dated January 29, 2014. Docket No. 58-5, at 1-8. Also on February 12, 2014, Defendants disclosed Kirk Kirkendall, CPA, as a rebuttal expert witness. Docket No. 54, at 3. Mr. Kirkendall's report was offered to rebut the opinions of Plaintiff's expert Mr. Sidlow. Docket No. 58, at 6. Mr. Kirkendall's expert report is dated February 12, 2014. Docket No. 58-8, at 1-12.

1.     <u>Motion to Strike Defendants' Rebuttal Expert Edward Howden</u>

In his rebuttal expert report, Mr. Howden discusses Mr. Sidlow's report, and offers detailed criticism of the methodology that he employed. Docket 58-5, at 2 ("This methodology is rejected by the majority of vocational rehabilitation experts and economic experts that I have come in contact with through my many years of experience as a vocational rehabilitation expert"). Mr. Howden asserts that a vocational expert upon whom Mr. Sidlow relies - Anthony Gamboa - proffers "theories [that] are not accepted by the majority of my vocational rehabilitation peers." *Id*. Mr. Howden also states that Mr. Sidlow's report "does not offer a detailed earning history to support a loss of earning capacity claim ... [and] seems

//

questionable[.]" *Id.*, at 7. Mr. Howden concludes by describing with specificity how and why he disagrees with the conclusions expressed by Mr. Sidlow in his expert report. *Id.*, at 8.

Much of Mr. Howden's report is a proper rebuttal to the report of Mr. Sidlow. *LaFlamme*, 2010 U.S. Dist. LEXIS 98815, at *8 (rebuttal testimony is proper where it question the "assumptions and methods" of an opposing initial expert). An obvious exception, however, is Mr. Howden's attempt to use "an entirely new method of analysis, the RAPEL method." Docket No. 54, at 8-9. Mr. Howden states, "I customarily employ the RAPEL approach to performing assessments of earning capacity loss claims." Docket No. 58-5, at 1. The problem however, as Plaintiff points out in reply, is that this is a "method of analysis that none of Plaintiff's experts perform." Docket No. 62, at 17. Defendants do not dispute that Plaintiff's expert Mr. Sidlow did not use the RAPEL method in his analysis, but urge the Court to follow two out-of-circuit cases[4] which state that it is "acceptable for an expert to use new methodologies in a rebuttal for the purpose of rebutting or critiquing the opinions of [an opposing party's] expert witness. Docket No. 58 (quotations and citations omitted). In response, Plaintiff maintains that, "at the very least," Mr. Howden's opinion should be "limited to solely the opinions that specifically rebut Mr. Sidlow's opinions." Docket No. 62, at 19.

The Court agrees, and will allow only those portions of Mr. Howden's rebuttal report which specifically rebut Mr. Sidlow's opinions, given that Mr. Howden's use of the RAPEL theory to offer a novel theory on Plaintiff's vocational profile is improper. The Court accordingly declines to adopt Defendants' position, especially in light of this Court's explicit holding in *Downs* that rebuttal experts "must restrict their testimony to attacking the theories offered by the adversary's experts." *Downs*, 2014 WL 814303, *5, *citing R & O Constr. Co.*, 2011 U.S. Dist. LEXIS 78032, at *8. As Plaintiff experts do not discuss the RAPEL method in any of their expert reports, Defendants' expert may not rely upon such a theory in rebuttal.

//

---

[4] *Allen v. Dairy Farmers of Am., Inc.*, 2013 U.S. Dist. LEXIS 7590 (D. Vt. Jan. 18, 2013); *Park W. Radiology v. CareCore Nat'l LLC*, 675 F. Supp.2d 314 (S.D.N.Y. 2009).

## 2. Motion to Strike Defendants' Rebuttal Expert Mr. Kirkendall

Like Mr. Howden's report, Mr. Kirkendall's rebuttal expert report provides specific criticisms of the methodology employed by Mr. Sidlow in arriving at the opinions expressed in his vocational report. Docket No. 58-8, at 3 ("The methodologies utilized by [Mr. Sidlow] ... are unreliable"). While he is not a vocational expert, Mr. Kirkendall is clearly comfortable analyzing the underlying theories and data sets used in Mr. Sidlow's analysis, and he provides a lengthy critique of the same. *Id.*, at 3-5 (Mr. Sidlow's "particular utilization of the ACS data is fatally flawed ... [and] fail[s] to consider how [Plaintiff's] alleged physical disability has any affect upon her work-life expectancy and her annual earnings"). Mr. Kirkendall writes that "[g]laringly absent from [Mr. Sidlow's] report is any discussion of any particularized facts explaining how [Plaintiff] fits into the post-injury ACS classification of having a 'physical disability.'" *Id.*, at 7. Mr. Kirkendall further asserts that Mr. Sidlow's "generalization from the ACS data to [Plaintiff] amounts to nothing more than conjecture[,]" and that his calculations "are founded only upon speculation." *Id.*, at 11.

While certain portions of Mr. Kirkendall's rebuttal report are clearly rebuttal in nature, his use of the RAPEL method is also improper. *See* Docket No. 58-8, at 5 ("One of the most common and generally accepted methods or models ... is referred to as the RAPEL model"). Plaintiff is correct that "Mr. Kirkendall presents an entirely new method to analyze vocational loss," and that this portion of Mr. Kirkendall's report should be disallowed. Docket No. 54, at 10. Defendants do not dispute that Plaintiff's expert Mr. Sidlow did not use the RAPEL method in his analysis, and Plaintiff once again requests that Mr. Kirkendall's opinion be "limited to solely the opinions that specifically rebut Mr. Sidlow's opinions." Docket No. 62, at 19. As with Mr. Howden's report, the Court will allow only those portions of Mr. Kirkendall's rebuttal report that specifically critique or call into question Mr. Sidlow's opinions, and which do not make reference to the RAPEL method. *Downs*, 2014 WL 814303, *5 (rebuttal experts "must restrict their testimony to attacking the theories offered by the adversary's experts"), *citing R & O Constr. Co.*, 2011 U.S. Dist. LEXIS 78032, at *8.

//

//

13

### 3. Whether the Untimely Disclosure of the RAPEL Portions of Mr. Howden's and Mr. Kirkendall's Reports was Justified or Harmless

Next, although the Court has determined that the RAPEL portions of Mr. Howden's and Mr. Kirkendall's respective reports do not qualify as proper rebuttal, the Court must still determine whether these portions might be admissible as sections properly belonging to an initial expert report. *Downs*, 2014 WL 814303, at *5 (citation omitted). Since Defendants failed to provide the RAPEL portions of Mr. Howden's and Mr. Kirkendall's reports within the deadlines set by this Court, the federal rules require that Defendants be precluded from using the RAPEL portions unless Defendants can demonstrate that their violation of the January 14, 2014, discovery deadline was "harmless" or "substantially justified." Fed. R. Civ. P. 37(c)(1). "[T]he burden is on the party facing sanctions to prove harmlessness." *Yeti by Molly Ltd.*, 259 F.3d at 1106. Among the factors that may properly guide a district court in determining whether a violation of a discovery deadline is justified or harmless are: (1) prejudice or surprise to the party against whom the evidence is offered; (2) the ability of that party to cure the prejudice; (3) the likelihood of disruption of the trial; and (4) bad faith or willfulness involved in not timely disclosing the evidence. *Lanard Toys, Ltd.*, 375 Fed. App'x at 713.

Here, Plaintiff demonstrates prejudice by representing that, because the RAPEL portions of Mr. Howden's and Mr. Kirkendall's reports "both present entirely new methodology and opinions, Plaintiff may need a different rebuttal expert to respond to them." Docket No. 62, at 20. Defendants argue that any prejudice will be obviated due to the fact that Plaintiff has scheduled Mr. Howden's and Mr. Kirkendall's depositions, and because Plaintiff has the ability to supplement her expert reports. Docket No. 58, at 11. Plaintiff states, however, that she "does not have experts retained or designated to rebut and respond" to the RAPEL methodologies described in Mr. Howden's and Mr. Kirkendall's reports. *Id*. Accordingly, Plaintiff contends, she cannot cure the prejudice which has accrued unless the Court were to "reopen and extend the rebuttal expert deadline; allow Plaintiff to retain and designate rebuttal experts; extend the discovery cut-off in order to conduct the appropriate discovery; and continue trial." *Id.*, at 20-21.

Defendants have not met their burden to demonstrate that the failure to disclose the RAPEL portions of Mr. Howden's and Mr. Kirkendall's reports as initial expert testimony was "harmless" or "substantially

justified." Fed. R. Civ, P. 37(c)(1). As Plaintiff points out in reply, "Plaintiff is not culpable in the issues presented ... but Plaintiff will suffer substantial harm ... because Plaintiff does not have experts to rebut the improper rebuttal opinions." Docket No. 62, at 24. The Court will therefore disallow Defendants from using, citing, or otherwise employing any portion of Mr. Howden's and Mr. Kirkendall's expert rebuttal reports which reference or rely upon the RAPEL method.

### III. CONCLUSION

Based on the foregoing, and good cause appearing therefore,

**IT IS HEREBY ORDERED** that Plaintiff's Motion to Strike Improper Rebuttal Experts, Docket No. 54, is **GRANTED** in part, and **DENIED** in part:

1) Plaintiff's motion to strike Defendants' expert witness John Schneider, Ph.D., is **DENIED** in accordance with the conditions in this Order;

2) Plaintiff's motion to strike Defendants' expert witness Clark Smith, M.D., is **DENIED**;

3) Plaintiff's motion to strike Defendants' expert witness Edward Howden is **DENIED**, subject to the conditions described in this Order; and

4) Plaintiff's motion to strike Defendants' expert witness Kirk Kirkendall, CPA, is **DENIED**, subject to the conditions described in this Order.

IT IS SO ORDERED.

DATED: August 8, 2014.

_____
NANCY J. KOPPE
United States Magistrate Judge