UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| LAUREN CALVERT,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>MICHAEL WAYNE ELLIS, *et al.*,<br><br>　　　　　Defendants. | Case No. 2:13-cv-00464-APG-NJK<br><br>**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S OMNIBUS MOTION IN LIMINE**<br><br>(Dkt. #190) |

　　　　Plaintiff Lauren Calvert filed a 21-part omnibus motion in limine. At my direction, the parties conferred but were able to resolve only five of these issues.

　　　　1. Hypothetical Medical Conditions Not Based on Evidence in This Case

　　　　Calvert requests that I exclude questioning of experts about hypothetical medical conditions where those hypotheticals are not based on the evidence in this case, such as a question about a prior injury that Calvert never suffered. I deny this request without prejudice for Calvert to object to particular questions at trial. I presume that all parties and their respective counsel understand and will abide by their obligations under the Federal Rules of Civil Procedure and the Federal Rules of Evidence.

　　　　2. The Absence of Medical Records

　　　　Calvert requests that I preclude the defense experts from testifying that they would have liked to review more pre-accident medical records. Calvert argues that allowing this type of testimony would then require her to prove a negative, *i.e.*, that she did not have prior injuries or that no such records exist. The defendants respond that an expert's testimony that additional medical records would have been helpful in rendering his or her opinion is relevant. Additionally, the defendants contend Calvert is withholding medical records that are currently the subject of a separate motion to compel. The defendants argue this request is premature and should be resolved at trial.

To the extent the defendants' experts have no good faith basis to conclude that additional medical records exist, they may not comment that reviewing more medical records would be helpful to their opinion. Such testimony would be speculative and irrelevant (and therefore waste time), and would suggest the possibility that the records exist but were not provided. Fed. R. Evid. 403. However, if the defendants' experts have a good faith basis to believe that the records (1) exist regarding a certain injury and (2) would inform their opinion regarding Calvert's particular injuries in this case, then I will not exclude that testimony. Calvert may explore the basis for this testimony, or lack thereof, through cross examination.

### 3. Malingering, Magnifying Symptoms, or Secondary Gain Motives

Calvert requests that I exclude any argument that she is malingering, magnifying her symptoms, or is motivated by secondary gain. The defendants respond that their medical expert, Dr. Duke, has experience evaluating magnification of symptoms and secondary gain motives due to his many years of treating patients. I will resolve this issue when I rule on the parties' other motions regarding Dr. Duke.

### 4. Permit Treating Physicians to Testify as to Causation Without Expert Report

Calvert requests that her treating physicians be permitted to testify about causation, future care, and the extent of her disability without the need to file a report under Federal Rule of Civil Procedure 26(a)(2)(B). She also argues these physicians should be able to comment on the care provided by other physicians, so long as that is pertinent to their own treatment of Calvert.

The defendants respond that Rule 26(a)(2)(C) requires disclosure of experts who will be used at trial, including treating physicians who will present expert testimony. The defendants contend Calvert did not make the required disclosures for her treating physicians.

The defendants have filed a separate motion on the subject of disclosure of the treating physicians' testimony. I will resolve any remaining issues when I rule on the other motion.

The defendants do not respond to Calvert's second argument that her treating physicians should be able to comment on the care provided by other physicians. I lack sufficient context to make a pre-trial ruling on the matter. I will rule on objections, if any, at trial.

### 5. Arguments Regarding Improper Use of Prescription Pain Medication

Calvert argues the defendants may try to accuse her of abusing pain medication, and I should exclude that evidence because its probative value is outweighed by unfair prejudice. Calvert argues there is no evidence she abused pain medications or that any abuse caused or contributed to her injuries. The defendants respond that her pain medication usage is relevant because it affects her life expectancy and her healing process. The defendants also argue there is evidence Calvert has improperly used her pain medication and that she was not honest with her physicians about her pain medication usage.

I deny this portion of the motion without prejudice to object to particular questions, answers, and argument at trial. To the extent the defendants are able to lay an evidentiary foundation that Calvert has misused pain medication, such activity may be relevant to her life expectancy and her healing process. Additionally, to the extent there is an evidentiary basis to show that Calvert has not been truthful with her treating physicians about misuse of medications, that may bear on her credibility. The defendants may make arguments about pain medication abuse so long as those arguments are supported by evidence elicited at trial.

### 6. Non-Testifying Consultant

Calvert seeks to exclude information regarding a specially retained, non-testifying consultant, "if any." (Dkt. #190 at 14.) The defendants respond by stating that Calvert has not identified any such consultant to exclude.[1] This appears to be another of plaintiff's boilerplate motions in limine not tailored to this particular case. Calvert has not identified a consultant or indicated whether one even exists, nor has she provided any other information from which I could make a ruling. Thus, I deny this portion of the motion. I presume that all parties and their respective counsel understand and will abide by their obligations under the Federal Rules of Civil Procedure and the Federal Rules of Evidence. There should be no need for a motion to enforce the obvious obligations under Fed. R. Civ. P. 26.

---

[1] Given that neither side could identify any non-testifying consultant or other potential witness that would be affected by this motion, I am very disappointed that counsel could not resolve this issue during their conference.

7. Independent Medical Examination

The parties resolved this portion of Calvert's motion and therefore it is moot.

8. Argument that the Case is Attorney Driven or a Medical Build-up Case

Calvert seeks to exclude argument that her attorneys directed her medical care or that her physicians performed unnecessary procedures. She contends there is no evidence to support those arguments and I therefore should preclude them. The defendants respond that they should be able to argue to the jury that this minor accident has turned into thousands of dollars in medical bills.

I deny this portion of the motion without prejudice to object to particular arguments at trial. The defendants may make arguments to the jury so long as those arguments are supported by the evidence elicited at trial. *See Alexander v. Wal-Mart Stores, Inc.*, No. 2:11-CV-00752-JCM-PAL, 2013 WL 427132, at *6 (D. Nev. Feb. 1, 2013).[2]

9. Collateral Source

The parties have resolved this portion of the motion, except as it relates to medical liens. Calvert seeks to exclude, under the collateral source rule, any reference to the fact that she obtained medical treatment by way of liens. The defendants respond that attorney-negotiated liens should be admissible because they are a product of the litigation process and may show bias because the treating physicians have a pecuniary interest in the outcome of the case.

The Supreme Court of Nevada has "adopt[ed] a *per se* rule barring the admission of a collateral source of payment for an injury into evidence for any purpose." *Proctor v. Castelletti*, 911 P.2d 853, 854 (Nev. 1996). It did so due to its conclusion that "[c]ollateral source evidence inevitably prejudices the jury because it greatly increases the likelihood that a jury will reduce a plaintiff's award of damages because it knows the plaintiff is already receiving compensation."[3]

---

[2] (*See also* Dkt. #242.)

[3] The Supreme Court of Nevada has not specifically addressed whether the collateral source rule applies to medical provider discounts or liens. *Tri-Cty. Equip. & Leasing v. Klinke*, 286 P.3d 593, 596 (Nev. 2012) (en banc) (holding that a state statute required presentation of the actual amount of workers' compensation benefits paid, and stating that "[b]ecause the amount of workers' compensation payments actually paid necessarily incorporates the written down medical expenses, it is not necessary to resolve

*Id.* Federal courts likewise have adopted the collateral source rule. *See Eichel v. New York Cent. R. Co.*, 375 U.S. 253, 255 (1963) (stating that evidence the plaintiff is receiving benefits from a collateral source is prejudicial); *Russo v. Matson Nav. Co.*, 486 F.2d 1018, 1020 (9th Cir. 1973) (stating that "where the injured plaintiff's compensation comes from a collateral source, it should not be offset against the sum awarded for the tort nor considered in determining that award") (quotation omitted).

Other judges in this District have concluded that the collateral source rule bars admission of evidence of medical write downs. "The collateral source rule makes the tortfeasor liable for the full extent of the damages caused, no matter how much the victim actually pays." *McConnell v. Wal-Mart Stores, Inc.*, 995 F. Supp. 2d 1164, 1169 (D. Nev. 2014). "That a medical provider ultimately accepts less than a billed amount, whether from an insurance company or from the victim directly, is not relevant to whether the tortfeasor is liable for the full value of the harm he has caused." *Id.* The rule is an equitable one "designed to ensure that the victim, and not the tortfeasor, benefits from any 'windfall' resulting from a difference between the value of the harm caused and the amount actually paid to remedy it." *Id.* Thus, a plaintiff "may recover the reasonable value of his treatment, and no more, without regard to whether the amount he paid out of his pocket directly in order to obtain that treatment was reduced by a third-party payor or a third-party payee." *Id.* at 1171 (emphasis omitted); *see also Alexander*, 2013 WL 427132, at *4-5; *Gresham v. Petro Stopping Ctrs., LP*, No. 3:09-CV-00034-RCJ-VPC, 2012 WL 5198481, at *3 (D. Nev. Oct. 18, 2012); Restatement (Second) of Torts § 920A(2) & cmt. c(3) (1979) ("Thus the fact that the doctor did not charge for his services or the plaintiff was treated in a veterans hospital does not prevent his recovery for the reasonable value of the services.").

Allowing the jury to learn that Calvert may be able to negotiate the amount of the lien would violate the collateral source rule for the same reasons that evidence of medical write downs is precluded. The collateral source rule focuses on the extent of the damages the tortfeasor

---

whether the collateral source rule applies to medical provider discounts in other contexts"). Two concurring Justices wrote separately to state their opinion that Nevada's collateral source rule would preclude evidence of medical write downs. *Id.* at 597-99 (J. Gibbons and J. Cherry).

caused, not on how much the victim actually pays. *McConnell*, 995 F. Supp. 2d at 1169. Thus, the possibility that Calvert may be able to negotiate a lower payment amount on medical liens is barred by the collateral source rule. Additionally, Calvert has not yet negotiated a reduced amount for those liens. Thus, it is speculative whether Calvert will be able to negotiate lower amounts and, if so, the amount of any discount. Fed R. Evid. 403. Accordingly, the defendants are precluded from questioning witnesses about negotiating the liens or from arguing that the liens may be negotiated for less than the full amount.

However, the fact that Calvert was treated by some physicians who hold medical liens does not, in and of itself, violate the collateral source rule. Evidence of the existence of a medical lien does not suggest a third-party source of payment; rather, it evidences an unpaid bill. At the January 11, 2016 hearing, Calvert confirmed that for those providers who treated her on a lien basis, no payment has been made. Thus, there is no danger that the jury will speculate about who paid a portion of her medical bills because Calvert still owes the entire amount charged. Moreover, the existence of a lien could implicate the lienholder's credibility (i.e., whether the lien-holding witness is testifying a certain way in order to help plaintiff recover funds to pay the lien). I therefore will not preclude the defendants from asking Calvert's treating physicians who are also retained experts (Drs. Kabins, Kaplan, and Prater) whether they hold a medical lien and in what amount. Nor will I preclude the defendants from arguing that Kabins, Kaplan, and Prater may be biased because they have an incentive to assist Calvert in maximizing recovery in this civil case. Expert compensation is relevant and admissible as it may impact bias.

I direct the parties to confer about whether any other treating physicians who will testify at trial (but who are not also retained experts) hold liens and, if so, whether any issues regarding testimony related to the lien remain in dispute as to those physicians. Fed. R. Evid. 403. Any such issue must be brought to my attention no later than the hearing currently set for January 20, 2016 at 9:00 a.m.

/ / / /

/ / / /

### 10. When Counsel was Contacted and Retained

Calvert seeks to exclude evidence regarding when she contacted and retained counsel. Calvert argues that her communication to her attorney that she wanted representation was a confidential communication that is privileged. The defendants respond that this information is relevant and does not violate the attorney-client privilege.

The "party asserting the attorney-client privilege has the burden of establishing the [existence of an attorney-client] relationship and the privileged nature of the communication." *United States v. Ruehle*, 583 F.3d 600, 607 (9th Cir. 2009) (quotation and emphasis omitted). "Because it impedes full and free discovery of the truth, the attorney-client privilege is strictly construed." *Id.* (quotation omitted). Courts typically employ an eight-part test to determine whether the attorney-client privilege applies:

> (1) Where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) unless the protection be waived.

*Id.* (quotation omitted).

Calvert has not met her burden of showing that the dates when she contacted or hired her lawyer are protected by the attorney-client privilege. Calvert contends that the date she hired her attorney necessarily reveals her communication to her lawyer that she wanted to hire him. She cites no authority in support of this proposition. The fact that she hired an attorney to represent her in relation to the car accident at issue has been publicly divulged through this litigation. Identifying the date Calvert contacted or hired her attorney discloses an act, not the substance of a confidential communication. Consequently, the dates when Calvert contacted and hired her attorney are not privileged.

As to relevance, I agree with other judges in this District that have concluded the weight to be given this evidence is for the jury to resolve. *Roberts v. Smith's Food & Drug Ctrs., Inc.*, No. 2:11-cv-01917-JCM-GWF, 2014 U.S. Dist. LEXIS 72609, at *11-12 (D. Nev. May 28,

2014); *Badger v. Wal-Mart Stores, Inc.*, No. 2:11-cv-01609-KJD-CWH, 2013 U.S. Dist. LEXIS 91216, at *22-23 (D. Nev. June 28, 2013). I therefore deny this portion of Calvert's motion.

### 11. Reference to Grand Jury Investigation into Doctors and Lawyers

Calvert argues the defendants should be precluded from mentioning that her doctors and lawyers were mentioned during a grand jury investigation into improper activities by Las Vegas doctors and lawyers. Calvert also seeks to exclude reference to her lawyer's expertise or that he primarily litigates personal injury cases. Finally, she seeks to exclude reference to the fact that her doctors have previously treated other clients represented by her lawyer. The defendants respond that both Judge Koppe and I have already ruled that Dr. Kabins' conviction for misprision of a felony is admissible. The defendants also argue that the remainder of the motion is premature.

I will deny the motion with respect to Dr. Kabins' prior conviction because I have already ruled that the defendants are "entitled to tell the jury about the expert's felony conviction because it involved dishonesty" and bears on his credibility. (Dkt. #145 at 1, 4.) However, I grant the motion with respect to the grand jury investigation generally. The defendants have not shown that the grand jury investigation is relevant nor have they shown Calvert's counsel or her other physicians were convicted of a crime in relation to that investigation. Thus, reference to the investigation has little to no probative value and the resulting unfair prejudice of suggesting Calvert's attorneys and doctors were involved in a conspiracy for which they were never charged or convicted would substantially outweigh any probative value. Fed. R. Evid. 403.

Calvert also requests to exclude reference to her lawyer's expertise in personal injury cases and that her doctors have previously treated other clients represented by her lawyers. The relevance of the lawyer's expertise seems dubious at this time. However, the existence of a regular referral relationship between a plaintiff's lawyer and a testifying expert could impact that expert's credibility. The parties have provided me no evidence about the extent of any such relationship. I deny this portion of the motion without prejudice to object at trial. The defendants are allowed to explore the relationship between Calvert's counsel and testifying witnesses so long

as there is a good faith belief such a relationship exists. Calvert may object to particular questions, answers, or arguments at trial.

### 12. Attorney Advertising

Calvert requests I exclude references to attorney advertising as irrelevant and prejudicial. The defendants respond that the public is well aware of attorney advertising and therefore arguments about attorney advertising would not bring anything to the jury's attention that they do not already know. The defendants have not explained why attorney advertising is relevant to the issues remaining in the action. Fed. R. Evid. 401, 402. I grant this portion of the motion.

### 13. Improper Arguments

Calvert seeks to exclude improper arguments, such as golden rule arguments and comments suggesting the case is frivolous. The defendants respond that the motion is speculative and premature, and they state they will follow the Federal Rules of Evidence. I deny this portion of the motion without prejudice to object to particular questions, answers, or arguments at trial. I presume that all parties and their respective counsel understand and will abide by their obligations under the Federal Rules of Civil Procedure, the Federal Rules of Evidence, and the applicable ethics rules.

### 14. Inflated Damages

Calvert seeks to exclude from the defendants' closing argument a suggestion that she strategically has inflated her damages because she knows the jury will not award her the total amount she requests. The defendants respond that the case on which the plaintiff relies is non-binding authority and that the nature and extent of the plaintiff's damages are the main disputed issues in this matter.

I deny this portion of the motion without prejudice to object at trial. If the evidence supports it, the defendants may argue that Calvert is seeking inflated damages. However, such an argument must be based on the evidence elicited at trial, and not on the supposition that plaintiffs generally artificially inflate their damage request because they believe juries will compromise and

reduce the amount requested, or other similar arguments not grounded in the evidence presented in this case.

### 15. Taxation

The parties resolved this portion of the motion and it is therefore moot.

### 16. Voir Dire Regarding Employment with or Financial Interest in Insurance Company

Calvert requests the jurors be questioned during voir dire about their employment with or financial interest in insurance companies. Insurance is not an issue in this case, so such questions are not relevant. Moreover, this is not a proper subject for a motion in limine. Per my orders regarding trial, the parties may submit proposed voir dire questions to the court by noon on the day of calendar call. (Dkt. #162 at 2, #240 at 3.)

### 17. Offers of Settlement

The parties resolved this portion of the motion and it is therefore moot.

### 18. Pre-Trial Motions

The parties resolved this portion of the motion and it is therefore moot.

### 19. Witnesses Commenting on Other Witnesses' Credibility

Calvert seeks to exclude witnesses commenting on other witnesses' credibility because the jury is the sole arbiter of credibility. Calvert does not identify what testimony she anticipates and seeks to exclude. I therefore have no context to make a pre-trial ruling. This portion of the motion is denied without prejudice to object at trial.

### 20. Physicians Working with Plaintiff's Counsel on Unrelated Cases

Calvert seeks to exclude evidence or argument that her treating physicians previously worked with her counsel on other unrelated cases. The defendants respond that this evidence is relevant and admissible. As set forth above, the existence of a regular referral relationship between a plaintiff's lawyer and a testifying witness could impact that witness's credibility. The parties have provided me no evidence about the extent of any such relationship. I deny this portion of the motion without prejudice to object at trial. The defendants are allowed to explore the relationship between Calvert's counsel and testifying witnesses so long as there is a good faith

belief such a relationship exists.  Calvert may object to particular questions, answers, or arguments at trial.

21.  Reference to Accident Being Unavoidable or an Act of God

The parties resolved this portion of the motion.

IT IS THEREFORE ORDERED that the plaintiff's omnibus motion in limine **(Dkt. #190) is GRANTED in part and DENIED in part** as more fully set forth in this Order.

IT IS FURTHER ORDERED that the parties shall confer regarding Calvert's treating physicians who are not also retained experts and report back to me at the January 20, 2016 hearing whether any issues remain in dispute regarding questioning these physicians about liens.

IT IS FURTHER ORDERED that the parties shall confer about (1) the admissibility of exhibits at trial and whether they can stipulate to admissibility and (2) deposition transcript designations and objections thereto, if any.  The parties should be prepared to discuss these topics at the January 20, 2016 hearing.

DATED this 12th day of January, 2016.

_____
ANDREW P. GORDON
UNITED STATES DISTRICT JUDGE